IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Case No. 05-cv-01050-MSK-MJW

RAYMOND S. VINTON,

     Plaintiff,

v.

ADAM AIRCRAFT INDUSTRIES, INC., and
GEORGE F. ADAM  a/k/a  Rick Adam,

     Defendants.

_____

**OPINION AND ORDER ON MOTION TO AMEND, OBJECTIONS TO MAGISTRATE
JUDGE RULINGS, AND MOTION FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to the Plaintiff's Motion to Amend

Complaint (**no docket number**, filed on or about May 31, 2005), the Defendants' response (**# 3**),

and the Plaintiff's reply (**# 12**); the Plaintiff's Motion to Stay Transfer Order (**no docket number**,

filed on or about June 7, 2005), to which no responsive papers were filed; Defendants' Motion for

Summary Judgment (**# 36**), the Plaintiff's response (**# 58**), and the Defendants' reply (**# 64**)[1]; the

Plaintiff's Objections (**# 63**) to the September 13, 2005 Order (**# 60**) of Magistrate Judge

Watanabe, the Defendants' response (**# 74**), and the Plaintiff's reply (**# 88**); the Plaintiff's

Objections (**# 75**) to the October 24, 2005 Order (**# 70**) of Magistrate Judge Watanabe, and the

_____

[1]Defense counsel annotated this docket entry as "Brief in Support of Motion for Summary
Judgment," rather than "reply brief."  Counsel are reminded that care in properly identifying
electronically filed pleadings is essential to a correct record.

Defendants' response (**# 81**)[2]; the Plaintiff's Objections (**# 89**) to the October 21, 2005 Order

(**#77**) of Magistrate Judge Watanabe, and the Defendant's response (**# 98**); the Plaintiff's

Objections (**# 95**) to the October 28, 2005 Order (**# 85**) of Magistrate Judge Watanabe, to which

no responsive papers have been filed; the Plaintiff's Objections (**# 96**) to the October 28, 2005

Order (**# 83**) of Magistrate Judge Watanabe, to which no responsive papers have been filed; and

the Plaintiff's Motion for a Hearing (**# 101**), to which no responsive papers have been filed.[3]

## BACKGROUND

Because most of the matters presented for determination at this time are either procedural

or involve a limited factual presentation, the Court will not engage in a lengthy recitation of the

allegations in the Amended Complaint (**no docket number**, filed on or about March 22, 2005).

It is sufficient to observe that this case arises from the termination of the Plaintiff's employment

with Defendant Adam Aircraft Industries, Inc. ("AAI").  The Plaintiff contends that, during his

tenure as General Counsel to AAI, he advised AAI's CEO, Defendant Adam, with regard to

various business and operational matters.  The Plaintiff contends that, as a result of expressing his

concerns to Defendant Adam, he was terminated in November 2002.  The Plaintiff further

---

[2]The Defendants appear to have filed the identical document again on October 31, 2005 (**# 87**).  Moreover, that re-filing is captioned as an "Objection to Appeal" rather than a "response" to the Plaintiff's Objections.  Counsel are again reminded of their obligation to properly identify electronically-filed documents and encouraged, when in doubt as to how to characterize a document or when an entry is mistakenly made, to immediately contact the Court's ECF Help Desk.

[3]The times set by D.C. Colo. L. Civ. R. 7.1(C) for full briefing of some of the listed matters have not yet elapsed.  However, the Court has reviewed the various filings presented to date on these matters and has concluded that additional briefing is not necessary to a full and fair consideration of the issues.

contends that, thereafter, Defendant Adam defamed him by asserting that the Plaintiff was the author of a letter critical of AAI that was sent to the Federal Aviation Administration.

The Plaintiff commenced this action in the District Court of Dallas County, Texas, on or about November 5, 2004. The Defendants removed the case to the United States District Court for the Northern District of Texas, citing diversity jurisdiction. The Plaintiff then filed an Amended Complaint, the current pleading in this case, asserting seven causes of action: (i) slander; (ii) breach of express contract; (iii) wrongful discharge; (iv) breach of the covenant of good faith and fair dealing; (v) promissory estoppel; (vi) tortious interference with existing business relationship; and (vii) tortious interference with prospective business relationship. The Defendants then moved to transfer the venue of the case to this Court. While that motion was pending, the Plaintiff moved to amend the Complaint again. The proposed Second Amended Complaint adds a new Defendant, Kimberly Burquest, AAI's Human Resources Director, and adds an eighth cause of action for conspiracy, alleging that Defendant Burquest conspired with Defendant Adam to carry out the Plaintiff's termination.

The Northern District of Texas granted the Defendant's motion to transfer without first ruling on the Plaintiff's Motion to Amend. The Plaintiff moved to stay the effect of the transfer, pending his filing of a motion to reconsider, but that motion was apparently filed on the same day that this Court received the transferred case file and assumed jurisdiction over the action. The remaining procedural facts are described in the discussion of the issues raised with regard to them.

## JURISDICTION

The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

## ANALYSIS

### A.  Standard of Review

#### 1.  Motion to Amend

Leave to amend a pleading shall be "freely granted" absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Beerheide v. Zavaras*, 997 F.Supp. 1405, 1409 (D. Colo. 1998), *citing Foman v. Davis*, 371 U.S. 178, 182 (1962).  An amendment can be denied on the grounds of futility if the amended pleading itself would be subject to dismissal.  *Jefferson County School Dist. v. Moody's Investor Services, Inc.*, 175 F.3d 848, 859 (10th Cir. 1999); *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir.1999).

#### 2.  Motion for Summary Judgment

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattret*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F. 3d 567, 569 (10th Cir. 1994); *see also In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 209 F. Supp.2d 1106 (D. Colo. 2002). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv SAP, Inc*., 210 F. 3d 1132 (10th Cir. 2000); *Carry v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987).   A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either

4

party. *Anderson*, 477 U.S. at 248. The court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l General Ins. Co.*, 817 F. 2d 83, 85 (10th Cir. 1987); *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995); *Grayson v. American Airlines, Inc.*, 803 F. 2d 1097, 1101 (10th Cir. 1986).

The analysis to be applied differs depending on whether the moving party is also the party with the burden of proof at trial. If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward,* 199 F.3d 1126, 1131 (10th Cir. 1999). Where the non-movant bears the burden of proof at trial, the non-movant must respond to the motion with sufficient evidence to demonstrate that there is a triable issue of fact with regard to each element challenged by the movant on each claim. *Ribozyme*, 209 F.Supp.2d at 1111; *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002).

### 3. Objections to Magistrate rulings

A party aggrieved by a Magistrate Judge's ruling on a non-dispositive matter may file Objections within 10 days of that ruling. Fed. R. Civ. P. 72(a). In considering Objections, the Court must adopt the Magistrate Judge's ruling unless it finds that the ruling is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997); *Ariza v. U.S. West Communications, Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996). Accordingly, the objections will be overruled unless the Court finds that the

5

Magistrate Judge abused his discretion or, if after viewing the record as a whole, the Court is left with a "definite and firm conviction that a mistake has been made." *Ariza,* 167 F.R.D. at 133, *citing Ocelot Oil Corp. v. Sparrow Indus.,* 847 F.2d 1458, 1464 (10th Cir.1988).

### B.  Motion to Amend

The Defendants oppose the Plaintiff's Motion to Amend, claiming that the proposed new conspiracy claim is futile.  They contend that the assertions against Ms. Burquest allege only actions taken by her in her capacity as Human Resources Director of AAI, and thus, it is legally impossible for her to conspire with AAI or Defendant Adam (whom the proposed Second Amended Complaint asserts is "the alter ego of the compan[y]").  It is a generally the rule that, because a corporation can only act through its officer and employees, such officers and employees are incapable of conspiring with the corporation or with each other with regard to actions taken by the corporation. *See e.g. Holter v. Moore & Co.*, 702 F.2d 854, 855 (10th Cir. 1983) (considering conspiracy in antitrust context); *Friedman & Son, Inc. v. Safeway Stores, Inc.*, 712 P.2d 1128, 1131 (Colo. App. 1985) (conspiracy cannot exist between alter egos or between a corporation and its instrumentalities).  Thus, to the extent the Plaintiff's conspiracy claim involves actions undertaken by Ms. Burquest on behalf of AAI, she cannot have conspired with AAI, nor with AAI's alleged "alter ego," Defendant Adam.

However, to the extent the actions alleged by Ms. Burquest in the proposed Second Amended Complaint arise outside the scope of her employment by AAI, a conspiracy claim could arguably lie.  The proposed Second Amended Complaint does not clearly describe any particular acts allegedly undertaken by Ms. Burquest, and thus, the Court cannot assess, at this time, whether such actions were taken within the scope of her employment with AAI.  Assuming that

the Plaintiff is unable to establish actions by Ms. Burquest in her individual capacity, the Court

can grant summary judgment on this claim at the appropriate time.  However, on the face of the

proposed Second Amended Complaint, the Court cannot say that there is no conceivable set of

facts that could be proven in which Ms. Burquest's acts could arise in a purely individual capacity,

and thus, the Court cannot say that the proposed conspiracy claim is necessarily futile.

Accordingly, the Plaintiff's Motion to Amend is **GRANTED**.  The Plaintiff shall file the

Second Amended Complaint within 5 days of the date of this Order and shall promptly effectuate

service of process on Ms. Burquest.  The Court's ruling on this motion renders the Plaintiff's

Motion for a Hearing on the Motion to Amend moot, and it is therefore **DENIED**.

### C.  Motion to Stay

The Plaintiff sought to have the Northern District of Texas stay transfer of this case

pending his filing of a motion for reconsideration.  Because transfer had already been effectuated

at the time the Plaintiff filed the motion, and because the Plaintiff has filed no such motion for

reconsideration in the ensuing time, this motion is **DENIED**, as moot.

### D.  Motion for Summary Judgment

The Defendant moves for summary judgment on each of the claims asserted in the

Amended Complaint.  Before turning to the sufficiency of each claim, the Court must first resolve

two threshold issues.

1. Rule 56(f)

The Plaintiff contends that the motion is premature, in that he has not had a reasonable opportunity for discovery. Although he devotes a substantial portion of his summary judgment response to describing the discovery undertaken to date, he has not complied with Fed. R. Civ. P. 56(f).

Rule 56(f) provides that "Should it appear from the affidavits of a party opposing the motion that the party cannot, for reasons stated, present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had." Courts grant relief under Rule 56(f) liberally. *Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1554-55 (10th Cir. 1993). However, the mere assertion by the non-movant that more discovery is needed is insufficient to properly invoke Rule 56(f). By its own terms, a request under Rule 56(f) must be made by an affidavit, stating reasons why the party is unable to present facts to oppose summary judgment. That affidavit must do more than simply allege that discovery has not been completed, or that specific facts are unavailable to the affiant. *Id.* at 1555. Instead, the affiant must show how the additional time requested will enable him to rebut the movant's allegations that no issue of fact exists. *Id.* To do so, the affiant should identify the specific facts sought to be obtained and what steps the affiant has already made to obtain them. *Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir.1992).

The Plaintiff has not submitted any affidavit in conjunction with his summary judgment response, and for this reason alone, relief under Rule 56(f)is not available. Even assuming that the Court were to treat the discussion contained in the Plaintiff's brief as the functional equivalent of

a Rule 56(f) affidavit– which this Court declines to do– it is still insufficient because the Plaintiff's brief does not "identify the specific facts sought to be obtained."  Accordingly, the Court declines to postpone consideration of the motion for summary judgment based on the Plaintiff's claim that discovery has not yet been completed.

### 2. Choice of law

In his response, the Plaintiff raises the issue of whether Colorado or Texas law controls the claims asserted in this case.  He contends that the transfer of venue does not effect a change in the law governing the substantive claims.  *Citing Benne v. International Business Machines Corp.*, 87 F.3d 419, 423-24 (10th Cir. 1996).  Although this statement is undeniably true, it is based on an assumption that, while the case was venued in Texas, that state's substantive law applied to the claims.  This assumption appears to be misplaced. When a particular issue implicates the law of more than one state, the choice of law rules of the forum apply.  Although venue has changed from Texas to Colorado, the Court will apply Texas law, as the Plaintiff invites it to do, to resolve this issue.  Texas law requires a court to apply the "most significant relationship" test to determine which state's law has to strongest relationship to the particular substantive issue to be resolved. *See e.g. Doctor v. Pardue*, ___ S.W.3d ___, 2005 WL 2234073 (Tx. App. Sept. 15, 2005); *Vanderbilt Mortg. & Fin., Inc. v. Posey*, 146 S.W.3d 302, 314-15 (Tx. App. 2004).

The first step in the test is to apply the factors articulated in Section 6 of the Restatement (Second) of Conflict of Laws. *Vanderbilt*, 146 S.W.3d at 314.  Those policies, which involve considerations of matters such as "the needs of the interstate and international systems" and "the

relevant policies" of Texas and the other jurisdiction, do not point clearly toward one jurisdiction or the other.

Thus, the Court turns to the second step, assessing the Restatement's factors applying to specific classes of cases. *Id.* Here, the Plaintiff's claims fall into two categories– tort claims (*e.g.* defamation, wrongful discharge, tortious interference with existing and prospective contracts) and contract claims (*e.g.* breach of contract, breach of covenant of good faith). Tort claims are governed by Section 145 of the Restatement, and require the Court to consider: (i) the place where the injury occurred; (ii) the place where the conduct causing the injury occurred; (iii) the residence of the parties involved; and (iv) the place where the relationship between the parties is centered. *Id.* Contract claims are governed by Section 188 of the Restatement, which requires the Court to consider: (i) the place of contracting; (ii) the place of negotiation; (iii) the place of performance; (iv) the place of the subject matter of the contract; and (v) the residence of the parties. *Restatement (Second), Conflict of Laws*, § 188(2).

Although the parties did not make comprehensive evidentiary presentations with regard to these factors, there are apparently undisputed facts that clearly point to applying Colorado law. Notably, the Amended Complaint asserts that AAI has its principal place of business in Colorado, and that, upon being hired by AAI, the Plaintiff agreed that "for a reasonable period of time he could commute between Dallas and Denver doing necessary work in both places." He apparently split his time equally between working on-site in Colorado and working remotely from his residence in Dallas. The Court infers from the foregoing facts that the Plaintiff's termination was effectuated from AAI's headquarters in Colorado, even if it may have been communicated to him while he was in Texas. Thus it would appear that the tort factors, particularly the factor relating

to the place where the conduct occurred, tilts in favor of applying Colorado law.  In addition, it appears that the center of the parties' relationship was Colorado.  Although AAI was apparently content to let the Plaintiff perform some work from his home in Texas (where he presumably communicated with the company in Colorado), it also insisted that he spend at least half his working time in Colorado at AAI's headquarters.  Thus, the totality of the tort factors tip decisively in favor of applying Colorado law.

Analysis of the contract factors also tip in favor of applying Colorado law.  Neither side presented any actual evidence of the locus of the parties' negotiations or place of contracting, but it appears that the intended place of performance and the location of the subject matter of the Plaintiff's employment contract was Colorado.  Indeed, even when he was performing services from his home in Texas, the Plaintiff was doing so for the benefit of AAI in Colorado.  Accordingly, Colorado law applies to the contract claims as well.

3. <u>Slander claim</u>

Turning to the specific claims, the Defendants seek summary judgment on the Plaintiff's slander claim.  The elements of a claim of slander under Colorado law are: (i) a defamatory statements concerning another; (ii) published by the defendant to a third party; (iii) with fault amounting to at least negligence by the publishing defendant; and (iv) special damages or actionability irrespective of such damages.  *Card v. Blakesee*, 937 P.2d 846, 850 (Colo. App. 1996). The Plaintiff bears the burden of proof on these elements.  The Defendants contend that the Plaintiff cannot come forward with evidence to support the second element– namely, that the Defendants published a statement about him to a third party.

11

The slander claim is premised upon the allegation that the Defendants accused the Plaintiff of authoring a letter to the FAA critical of AAI.  The Plaintiff's response cites to two his deposition testimony and his affidavit to establish the element of publication.  Pages 222-224 of his deposition discuss a conversation between the Plaintiff and an individual named Mike Bierman.  Mr. Bierman "asked [the Plaintiff] pointedly three times" whether the Plaintiff wrote the letter.  The Plaintiff goes on to state that "so it was clear to me that someone had told him I did, someone at [AAI]."  The Plaintiff also testified in his deposition that an individual named Matt Kull told the him that Defendant Adam had accused the Plaintiff of writing the letter.  The Plaintiff's affidavit essentially restates this deposition testimony.

The mere fact that Mr. Bierman asked the Plaintiff whether he wrote the letter cannot, alone, give rise to a reasonable inference that the Defendants had accused the Plaintiff of doing so.  At best, the incident might indicate that <u>someone</u> said something to Mr. Bierman, but does not suggest in any way that it was the Defendants who did so.  Absent other evidence indicating that Mr. Bierman's inquiry was the result of a specific statement by one of the Defendants, it does not establish a *prima facie* showing as to this element.

The statement by Mr. Kull that Defendant Adam accused the Plaintiff of writing the letter could, if admissible, prevent summary judgment on the defamation claim.  The party opposing summary judgment is not required to come forward with evidence in a form that would be admissible at trial, but the content or the substance of the evidence presented must be admissible.  *See Adams v. American Guarantee and Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).  Thus, "a third-party's description of a witness' supposed testimony is not suitable grist for the summary judgment mill."  *Id.*  Here, Mr. Kull's own personal testimony that he heard Defendant

12

Adam contend that the Plaintiff wrote the letter might be admissible, but the Plaintiff cannot testify secondhand to Mr. Kull's knowledge.  The Plaintiff's testimony– in essence that "Mr. Kull said Defendant Adam said it"– is classic hearsay, an out-of-court statement by Mr. Kull offered for its truth.  An affidavit from Mr. Kull asserting this fact has not been provided by the Plaintiff. The Court is merely asked to take the Plaintiff's word for what Mr. Kull would say.  As noted in *Adams*, this is insufficient to satisfy Plaintiff's burden of establishing a *prima facie* showing on this element.

There being no other evidence offered by the Plaintiff in support of the slander claim, the Court finds that the Plaintiff has failed to carry his burden of establishing a *prima facie* showing that the Defendants published the allegedly defamatory statement about the FAA letter.  Thus, the Court **GRANTS** summary judgment to the Defendants on the slander claim.[4]

4. Breach of contract

The Defendants move for summary judgment on the Plaintiff's breach of contract claim because, as a matter of law, the claim is barred by the statute of frauds. On this affirmative defense, the Defendants have the burden of proof.   The breach of contract claim is that the Defendants breached an oral contract to employ Plaintiff "until retirement," a period that the Plaintiff states was 12 years past the date of his termination.

Colorado follows the traditional doctrine of the statute of frauds, requiring that "every agreement that by the terms is not to be performed within one year" be memorialized in writing,

---

[4]Although this Court's Practice Standards reflect the Court's reluctance to grant partial summary judgment, *see* MSK Practice Standard H.3.b.3, the Court finds that granting summary judgment on the claims described herein will substantially reduce the amount of evidence to be presented at trial.

signed by the party to be bound.  C.R.S. § 38-10-112; *Professional Bull Riders, Inc. v. AutoZone, Inc.*, 113 P.3d 757, 761 (Colo. 2005).  The Court construes the one-year provision narrowly, applying to "only those agreements that exclude, by their very terms, the possibility of performance within one year." *Id.*  There is no dispute that the Plaintiff's contract of employment was not reduced to writing nor signed by the Defendants, and thus, the issue is whether, based on the undisputed facts, the employment contract could have been fully performed according to its terms within one year.

The Plaintiff cites to four pages from his deposition for the proposition that the alleged oral contract of employment could be terminated by the Defendants for cause at any time.  In his deposition, the Plaintiff testifies that, during their negotiations Defendant Adam informed the Plaintiff that he could be terminated for "performance issues or any other issues kind of like that." The Court views this evidence in the light most favorable to the Plaintiff, and thus concludes that the contract negotiated by the parties could have been fully performed within one year, if for example, the Defendants concluded that the Plaintiff's performance was unsatisfactory.

The Defendants reply that unsatisfactory performance by the Plaintiff would amount to a breach of the contract, and a breach is not the same as "full performance of the contract within one year".  They argue that an employee's satisfactory discharge of his duties can be considered to be a term of the contract, and thus, poor performance by an employee thus constitutes a breach of the contract.

This position is incongruous with Colorado law.  The general rule in Colorado is that oral contracts of employment for "so long as the employee performs satisfactorily" are not barred by the statute of frauds.  *See Pickell v. Arizona Components Co.*, 902 P.2d 392, 397 (Colo. App.

1994), *rev'd on other grounds*, 931 P.2d 1184 (Colo. 1997).  According to the Plaintiff, the contract could be terminated for "performance issues or any other issues kind of like that."  This language would appear to bring this agreement within the general rule in Colorado described in *Pickell*, and defeats any defense based on the statute of frauds.

Because the Defendants do not assert any other grounds for summary judgment on the Plaintiff's breach of contract claim, summary judgment is **DENIED** on this claim.[5]

### 5. Wrongful discharge

Colorado recognizes a narrow cause of action for wrongful discharge in violation of public policy, restricting an employer's right to terminate when the termination contravenes accepted and substantial public policies as embodied by legislative declarations, professional codes of ethics, or other sources.  *Wisehart v. Meganck*, 66 P.3d 124, 127 (Colo. App. 2002).  The elements of such a claim are that: (i) the employer directed the employee to perform an illegal act as part of the employee's duties; (ii) the action directed by the employer would violate a statute or clearly-expressed public policy; (iii) the employer was terminated as a result of refusing to perform the illegal act; and (iv) the employer was award or should have been aware that the employee's refusal was based upon the employee's reasonable belief that the act was illegal.[6]  *Rocky*

---

[5]At the same time, the Court declines to grant summary judgment to the Plaintiff on the Defendants' affirmative defense of statute of frauds.  The precise terms of the alleged contract between the parties have not been definitively established.

[6]Although the Colorado Supreme Court in *Mariani* purports to summarize its prior holding in *Lorenz*, its articulation of the elements of the claim is substantially narrower than its prior discussion.  *Mariani* suggests that the claim requires an employee's refusal to perform some illegal act, while *Lorenz* appears to afford protection to both the refusal to perform such an act or where the employer "prohibited the employee from performing a public duty or exercising an important job-related right or privilege."  823 P.2d at 109.  Nevertheless, for the reasons stated *infra.*, the Court need not consider whether *Mariani* or *Lorenz* best describes the contours of the

*Mountain Hosp. & Medical Serv. v. Mariani*, 916 P.2d 519, 427 (Colo. 1996), *citing Martin Marietta v. Lorenz*, 823 P.2d 100, 109 (Colo.1992). The Plaintiff has the burden of proof as to every element.   The Defendants challenge the ability of the Plaintiff to establish any of the elements.

The Plaintiff's response to this portion of the motion contains extensive argument on the legal parameters of the claim under both Colorado and Texas law, but does not refer to a single item of evidence or particular fact in support of any of the four elements.[7]  When faced with a motion for summary judgment, a party with the burden of proof may not simply rest on assertions contained within his pleadings, and must come forward by adducing <u>specific</u> facts supporting the claim.  *BancOklahoma Mort. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1097 (10th Cir. 1999). The facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).  The Plaintiff has not adduced any specific facts that support the wrongful discharge claim.[8]  Nowhere does he identify the

_____

claim.

[7]The response does reference certain procedures regarding to removal of corporate officers in the Bylaws of AAI that the Plaintiff contends were violated, but this citation has no apparent relevance to any of the four elements of the wrongful discharge claim.

[8]The Court notes that, although the Plaintiff's responsive brief itself makes no mention whatsoever of facts giving rise to his claim, he has attached some 36 pages of exhibits to the response. No specific reference is made by the Plaintiff to any particular exhibit, page or fact. Although this Court could elect to venture, unguided, into those exhibits in the hope of unearthing sufficient facts to save the claim, *Adler*, 144 F.3d at 672 ("The district court has discretion to go beyond the referenced portions of these materials, but is not required to do so"), it declines to do so.  As the 10th Circuit in *Adler* observes, the courts play a neutral role in the  litigation process, and should be "wary of becoming advocates who comb the record of previously available evidence and make a party's case for it."  *Id.* In addition, the Court notes that its Practice Standards set forth a format for responding to summary judgment motions that ensure that disputed issues of fact are highlighted for the  Court's attention.  *See* MSK Practice Standard

allegedly illegal act he was instructed to perform, the statute or clearly-expressed public policy

that act would violate, or circumstances showing that his termination was a result of his refusing

to perform such an act.  Accordingly, he has failed to meet his burden of production on this claim,

and the Defendants' motion for summary judgment on this claim is **GRANTED**.

### 6.  Breach of the covenant of good faith

This claim turns on the same facts as the Plaintiff's breach of contract claim.  Because

summary judgment on this claim, even if warranted, would not reduce the evidence to be

presented at trial, the Court will not separately consider this claim.  The Defendants may challenge

the sufficiency of this claim pursuant to Fed. R. Civ. P. 50 at the close of the Plaintiff's case, or at

such time as the Plaintiff may dismiss the breach of contract claim.  The motion for summary

judgment on this claim is **DENIED**.

### 7.  Promissory estoppel

The Plaintiff contends in this claim that, in the absence of an actual employment contract,

he relied to his detriment on the Defendants' promise that he would remain employed by AAI

until he retired.  The elements of a claim of promissory estoppel are: (i) the Defendants made a

promise to the Plaintiff; (ii) that they should reasonably have expected would induce action or

forbearance by the Plaintiff; (iii) that the Plaintiff relied on the promise to his detriment; and (iv)

the promise must be enforced to prevent injustice.  *Patzer v. City of Loveland*, 80 P.2d 908, 912

(Colo. App. 2003).  The Defendants contend that the Plaintiff cannot adduce sufficient evidence

on any of the elements.

---

H.3.b.2.  The Plaintiff did not use the Court's suggested format, further warranting the Court's
decision to refrain from combing the record of its own accord.

The Plaintiff's response on this issue consists of three sentences: "The Defendants' characterize Plaintiff's statements in way (sic) to suit their purpose that there was no agreement to work until Plaintiff retired.  Their argument is that a promise between friends of forty years in an informal environment over a glass of good wine is not a promise.  Plaintiff believes that given the context of the three months of discussions between long-standing friends a jury could find otherwise." *Docket # 58-1 at 13*.  Even assuming that this response incorporated, by reference, a citation to certain evidence regarding discussions between the Plaintiff and Defendant Adam, and thus, might constitute sufficient evidence to make a prima facie showing on the first and second elements of the claim, it offers nothing applicable to the third or fourth elements of the claim.  There is no evidence in the record to indicate that the Plaintiff relied on a promise of extended employment or that such reliance was to his detriment.  Because the Plaintiff has failed to make a *prima facie* showing as two, if not all, the elements of this claim, the Defendants motion for summary judgment on this claim is **GRANTED**.

### 8.  Tortious interference

The Plaintiff's final two claims in the Amended Complaint allege tortious interference with existing and prospective business relationships, respectively.  It is clear from the Amended Complaint that the "existing business relationship" allegedly subject to interference was the Plaintiff's employment relationship with AAI, and the "prospective business relationships" were some undisclosed future contractual relationships with AAI.  An essential element of both claims is that the Plaintiff had an existing or prospective contractual relationship with a third party.  *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo. 1995) (prospective relations); *Colorado National Bank v. Friedman*, 846 P.2d 159, 170 (Colo.1993) (existing contract).

In both claims, the Plaintiff asserts interference with his existing or prospective contractual relations with AAI.  Under Colorado law, the party to the existing or prospective contract cannot be liable for interfering with its own contract.  *Friedman*, 846 P.2d at 170 ("Under Colorado law, the tort exists to protect parties to a contract; accordingly, it is the conduct of the third person who is not a party to the contract that is punished for inducing a breach or preventing performance of the contract.") (emphasis in original).  Thus, any claim that AAI interfered with the Plaintiff's contractual relations with itself is legally untenable.  Because the Plaintiff has also taken the position that Defendant Adam is the alter ego of AAI, no claim can be brought against Defendant Adam for interfering with the contract between Defendant Adam's alter ego, AAI, and the Plaintiff.  *Trimble v. City and County of Denver*, 697 P.2d 716, 726 (Colo. 1985) ("Kauvar and the City were obviously not alter egos, a relationship which would preclude characterizing the City as a third person").  Accordingly, summary judgment is **GRANTED** to both Defendants on the tortious interference claims.[9]

---

[9]In addition, the Court would also grant summary judgment on the interference with prospective relations claim on the grounds that the Plaintiff has failed to demonstrate a triable issue of fact as to whether there was any prospective relation subject to interference. Such claim requires the Plaintiff to prove that the Defendants interfered with the formation of a contractual relationship, or similar expected commercial benefit.  *Amoco*, 908 P.2d at 500.  The Plaintiff has not identified any facts to show a particular prospective relationship subject to interference.

**E.  Objections to Magistrate Judge's rulings**

The Plaintiff has objected to numerous non-dispositive rulings by the Magistrate Judge.

The Court will examine each of these rulings in turn.

1.  September 13, 2005 Order (**# 60**)

On September 13, 2005, the Magistrate Judge entered a Minute Order (**# 60**) addressing

numerous discovery disputes.  The Plaintiff objects to five[10] components of the Magistrate

Judge's Order: (i) the portion of the Order that states "The parties are warned that sanctions will

be imposed should the parties attempt to try this case in the media," *Docket # 60 at 2*; (ii) the

portion of the Order granting the Defendants' Motion to Seal (**# 17**), and sealing the deposition

transcript of Ms. Burquest, *Docket # 60 at 2*; (iii) the portion of the Order that grants the

Defendants' Motion to Compel (**# 9**) and directs the Plaintiff to produce his personal tax returns

for the years 1999 through 2004; (iv) the portion of the Order that grants the Defendants' Motion

to Compel (**# 9**) and directs the Plaintiff to produce documents reflecting his communications with

third parties concerning AAI between November 1, 2002 and the present, and with present or

former employees of AAI at any time; and (v) the portion of the Order that granted sanctions to

the Defendants on two motions to compel.

(a)  "try this case in the media"

The Court finds that the Magistrate Judge's advisement is not an "order" capable of

review for abuse of discretion or clear error.  The Magistrate Judge's comment is merely a

warning that efforts to manipulate the outcome of the case through public fora would be viewed

---

[10]The second and third areas discussed in the Plaintiff's Objections appear to address the same issue.

with disfavor, a sentiment this Court shares not just in this case, but in all cases.  In any event, in light of the summary judgment ruling, the strategic value of future public comment about the issues remaining in this case is minimal.  Until such time as the Magistrate Judge actually imposes the threatened sanctions, the Plaintiff's Objections to this "order" are **OVERRULED** as premature.

(b)  sealing of Ms. Burquest's deposition

The Plaintiff raises two arguments regarding the Magistrate Judge's ruling sealing Ms. Burquest's deposition: (i) that it is an improper application of the sequestration rule in Fed. R. Evid. 615, and (ii) that it failed to properly apply the "good cause" standard of Fed. R. Civ. P. 26(c).  The Plaintiff does not dispute that Rule 26(c) permits the Magistrate Judge to enter orders such as sealing a deposition or prohibiting parties from disclosing deposition testimony to other potential witnesses.  Thus, the sole question before the Court is whether the Magistrate Judge abused his discretion in finding sufficient cause to do so.

A finding of "good cause" under Rule 26(c) requires the Court to balance the objecting party's need for the information against the injury that might result from unrestricted disclosure, as well as consider the balance between privacy interests and the public's right of access to court proceedings.  *Exum v. U.S. Olympic Committee*, 209 F.R.D. 201, 206 (D. Colo. 2002).  In doing so, the Court is particularly cognizant of the fact that a major line of inquiry in Ms. Burquest's deposition– the alleged retention of an alcoholic AAI official– is of no particular relevance to the claims remaining after summary judgment.  The Plaintiff has concluded the deposition, and thus, has had full access to all the information so as to develop his case.  Matters relating to collateral issues such as the AAI official are no longer relevant to the issues to be adjudicated (assuming

21

they ever were), and thus, the public's legitimate interest in that information is minimal. With this minimal weight on one side, the general privacy interests of both the AAI official and AAI itself are significant enough to tip the balance in favor of sealing. Accordingly, the Court finds that the Magistrate Judge did not abuse his discretion in sealing the transcript, and the Plaintiff's Objections on this issue are **OVERRULED**.

(c) production of tax returns

The Magistrate Judge granted the Defendants' motion to compel which sought production of the Plaintiff's tax returns from 1999 through 2004. The Plaintiff contends that the returns, particularly those occurring prior to his termination, are not relevant. The extent of the damages allegedly sustained as a result of the Defendants' conduct is an important issue in this litigation, and evidence of the Plaintiff's earnings for a period of time both before and after his termination certainly fall within the broad reach of Fed. R. Civ. P. 26(b)(1). The Court cannot find that the Magistrate Judge abused his discretion in permitting this discovery, and the Plaintiff's Objections to this ruling are **OVERRULED**.

(d) communications with third parties

The precise nature of the Plaintiff's Objections to this ruling are unclear. It appears that the Plaintiff does not specifically object to the Magistrate Judge's order that he produce the requested information, as the Objections only mention the Plaintiff's position on the discoverability of this material in passing. Rather, the bulk of the argument is devoted to a complaint that the Magistrate Judge heard motions related to the Defendants' discovery requests at a separate hearing from one held regarding the Plaintiff's discovery requests. The Plaintiff argues that "[h]earing Plaintiff's Combined First Discovery Requests along with the other six

motions would have put an entirely different perspective on the discovery process in this case." This Court has doubts that the Magistrate Judge's scheduling of various motions for hearings constitutes an "order" that can be reviewed for abuse of discretion, but to the extent it can, the Court finds that the Magistrate Judge did not abuse his discretion by hearing the matters when he did, and the Plaintiff's Objections on this issue are **OVERRULED**.

(e)  sanctions

The Magistrate Judge awarded ordered costs and fees against the Plaintiff on the Defendants' two motions to compel.  The Plaintiff's Objections to this ruling are also somewhat unclear.  After contending that he "does not agree that sanctions are warranted in either instance," he raises three points: (i) that he was prejudiced by not having his complaints about the Defendants' discovery requests heard at the same time; (ii) that his objections to the discovery demands were well-founded[11]; and (iii) that the Plaintiff himself did not seek sanctions from the Defendants for their failure to respond to his discovery.

The first and third arguments are irrelevant to the issue of whether the Magistrate Judge abused his discretion in imposing sanctions.  With regard to the second argument, Fed. R. Civ. P. 37(a)(4)(A) presumes that costs and fees for bringing a successful motion to compel will be granted by the Court, unless the Court finds that the party to be compelled's position was "substantially justified."  Although the Magistrate Judge did not explicitly find that the Plaintiff's position was not substantially justified, by awarding sanctions, it appears that the Magistrate Judge implicitly found that to be the case.

---

[11]The entirety of this argument is as follows: "Second, Plaintiff's objections on tax returns and communications with non-parties were well-grounded and certainly not submitted in an effort to block that discovery to which Defendant is entitled."

Having reviewed the Plaintiff's brief in opposition to the motions to compel, the Court cannot say that the Magistrate Judge abused his discretion in finding the Plaintiff's position was not "substantially justified."  The Plaintiff's arguments on the tax return issue consisted of a lengthy paragraph quoting extensively from mostly unpublished and non-biding caselaw, and concluded with a single, conclusory sentence regarding the facts of this case.  *Docket* # 20 at 2-4.  The Plaintiff's arguments on the communication with third parties were addressed in two briefs.  In one, an admittedly untimely response, the Plaintiff argued in a single conclusory statement that the communications were privileged attorney work product, and in a second sentence, that the Plaintiff was honoring a pledge of confidentiality given to those he communicated with.  *Docket* # 20 at 4.  In the other brief, the Plaintiff alleged, in a single paragraph without supporting citations to caselaw, that his claim of work product privilege was based on his investigations of the facts of the case before bringing it *pro se*.  *Docket* # 19 at 2.  Based on the cursory arguments offered in the Plaintiff's briefs, the Court agrees with the Magistrate Judge's implicit finding that his positions were not "substantially justified."  The Plaintiff's Objections to the Magistrate Judge's award of sanctions are **OVERRULED**.

## 2. October 4, 2005 Order (**# 70**)

In this Order, the Magistrate Judge denied the Plaintiff's motion to stay the effect of the prior order compelling production of discovery pending the Court's resolution of the Plaintiff's Objections to that order.  Although the Court has reviewed the parties' submissions on this issue and would be inclined to find that the Magistrate Judge did not abuse his discretion in denying a stay, the matter is rendered moot by the Court now having ruled on all of the Plaintiff's Objections.  Accordingly, the Plaintiff's Objections on this issue are **OVERRULED**, as moot.

### 3. October 21, 2005 Order (# 77)

In this Order, the Magistrate Judge fixed the amount of sanctions payable under the September 13, 2005 Minute Order at $4,4750.50.  The Plaintiff Objects that the Order "did not address directly any of the points made in Plaintiff's response."  In the cited response, the Plaintiff argued that the sanction imposed by the Magistrate Judge should reflect consideration of  factors such as the severity of the violation, ability to pay, and the amount necessary to achieve deterrence, citing an unpublished decision from a District Court in Virginia, which, in turn, relied upon *In re Kunstler*, 914 F.2d 505, 523 (4th Cir. 1990).  These cases both interpret Fed. R. Civ. P. 11, not Fed. R. Civ. P. 37(a)(4)(A), upon which the Magistrate Judge's award of sanctions was based.  Rule 37(a)(4) is pinpoint specific as to the amount of the sanction to be awarded: "the court shall . . . require the party . . . to pay the moving party the reasonable expenses incurred in making the motion, including attorney's fees."  The Magistrate Judge's award complied fully with Rule 37a)(4), and did not amount to an abuse of discretion.  The Plaintiff's Objections to this order are **OVERRULED**.

### 4. October 28, 2005 Order (# 85)

In this Order, the Magistrate Judge denied a motion for reconsideration (# 61) by the Plaintiff, concerning limitations in the Scheduling Order limiting the number of interrogatories to 25 per side, and limiting requests for admission to 25 per side.  The Plaintiff's Objections complain of both the Magistrate Judge treating the motion as one for reconsideration, rather than Objections to this Court under Rule 72(a), and the Magistrate Judge's refusal to increase the number of interrogatories and requests for admission permitted to the Plaintiff.

With regard to treating the matter as one for reconsideration, the Magistrate Judge did not abuse his discretion.  The Plaintiff presented argument that was not apparently in the record at the time the Magistrate Judge entered the Scheduling Order, and thus, this Court referred (**# 62**) the Plaintiff's motion to the Magistrate Judge as a motion for reconsideration.  Turning to the substance, Fed. R. Civ. P. 33 presumptively limits interrogatories to "25 in number," "serve[d] upon any other party."  The Plaintiff argues that because AAI and Defendant Adam are separate parties, he should be entitled to exceed the 25 interrogatory limit in the Scheduling Order.[12] However, commentators on Rule 33 have expressed a belief that "in some instances nominally separate parties should be considered one party for purposes of the 25-interrogatory limitation." Wright et al., <u>Federal Practice and Procedure</u>, Civil 2d § 2168.1.

Here, the Plaintiff has taken the position that AAI and Defendant Adam are alter egos, and, in essence, should be treated as a single, unified entity.  In such circumstances, the Court cannot say that the Magistrate Judge abused his discretion in limiting the Plaintiff to 25 interrogatories in total.  Fed. R. Civ. P. 36, governing requests for admission, does not set a presumptive limit.  The Court cannot say that the Magistrate Judge abused his discretion in finding that 25 requests for admission was sufficient in this case, particularly now that the scope of the case has been dramatically narrowed by the Court's summary judgment ruling. Accordingly, the Plaintiff's Objections to this Order are **OVERRULED**.

---

[12]He does not explain how the presence of two parties should justify increasing the number of permitted interrogatories to his requested 100, however.

5. <u>October 28, 2005 Order</u> (**# 83**)

This Order granted in part and denied in part two motions to compel (**# 22, 23**) filed by the Plaintiff, making specific findings and rulings with regard to each discovery request for which a response was sought.  The Plaintiff has made a multitude of objections to this ruling, many of which are stated only cursorily.  Specifically, the Plaintiff objects to, with regard to his Second Request for Production of Documents: (i) the ruling denying the motion to compel responses to Requests for Admission 3 and 4; (ii) the denial of the motion with regard to Interrogatory 2; (iii) the denial of Interrogatory 10; (iv) the denial of Request for Production 6; (v) the denial fo Request for Production 8; (vi) the denial of Request for Production 9; (vii) the denial of Request for Production 16 and 17; and with regard to his Third Request for Production of Documents, objects to: (viii) the denial of Request for Production 1 and 2; (ix) the denial of Request for Production 7; (x) the denial of Request for Production 9; (xi) the denial of Request for Production 10; and (xii) the denial of Request for Production 11.

(a) Requests for Admission 3 and 4

This request sought to have the Defendants admit the authenticity of e-mails from the Plaintiff to certain individuals.  The Defendants responded that they had made reasonable inquiry into the matter, but were unable to admit or deny the request.  The Magistrate Judge ruled that this response was sufficient, and the Plaintiff objects, asking rhetorical questions regarding the nature of the Defendants' investigation and suggesting that the Defendants should be required to describe their investigation in greater detail.  The Advisory Committee notes to Fed. R. Civ. P. 36 state that "The revised rule requires only that the answering party make reasonable inquiry and secure such knowledge and information as are readily obtainable by him. . . Rule 36 requires only

27

that the party state that he has taken these steps." Thus, the Magistrate Judge did not abuse his discretion in finding this response sufficient, and the Plaintiff's Objections on this issue are **OVERRULED**.

(b)   Interrogatory 2

This interrogatory sought identification of "all the occasions that any person or officer at AAI received advice or counsel from Plaintiff that demonstrated a lack of competence." The Defendants responded that they had occasional disagreements with the Plaintiff, but did not discharge him for lack of competence. The Magistrate Judge found that this was a sufficient answer. The Plaintiff objects, stating that it did not answer the question. The Court finds that the Magistrate Judge did not abuse his discretion in finding this answer, which appears to disclaim any assertion of incompetence, to be sufficient. The Plaintiff's Objections on this issue are **OVERRULED**.

(c)   Interrogatory 10

This interrogatory asked for the dimensions of the general office layout of AAI, including the dimensions of offices and cubicles. The Defendants objected on the grounds of relevance, and the Magistrate Judge agreed. The Plaintiff objects, stating that "describing to the jury the physical environment where Plaintiff worked is important for them to understand the dynamics of personal interactions . . ." The Court finds that the information sought is irrelevant to any of the claims in this action, and the Plaintiff's Objections are **OVERRULED**.

(d)   Request for Production 6

The Plaintiff sought "All documents furnished by AAI to the FAA relating to the 'fraud letter.'" The Defendants responded that a letter written by AAI to the FAA on September 22,

2003 is privileged.  The Magistrate Judge found that the document was privileged pursuant to 14

C.F.R. § 193.  The Plaintiff objects, claiming that the cited privilege can only be exercised by the

FAA.[13]  14 C.F.R. § 193 is a suite of regulations governing the FAA's "Protection of Voluntarily

Submitted Information."  14 C.F.R. § 193.7(a) discusses situations in which "the FAA does not

disclose the information," and later explains how the FAA will respond to a subpoena for

information it has been supplied to it.  14 C.F.R. § 193.9 discusses other situations in which the

FAA may disclose information.  These regulations clearly restrict the ability of the FAA to

disclose information persons supply to it, but does not purport to render that information

privileged in the hands of the person supplying it.  By contrast, 14 C.F.R. § 193.17 states that in

certain circumstances, parties receiving information from the FAA are limited in their ability to

disclose that information to others.

It is not clear from the Magistrate Judge's decision which section of 14 C.F.R. § 193

applied in this case.  To the extent that the Magistrate Judge found that § 193.17 applied to the

disputed evidence, that determination that the information in the hands of AAI would be

privileged would be a correct application of the law.  However, to the extent that the Magistrate

Judge found that information supplied by AAI to the FAA under some other provision of § 193

rendered that information privileged in the hands of AAI (*c.f.* a request for that information

directed to the FAA), that ruling would appear to be contrary to law.  Because it is not clear from

---

[13]The Plaintiff also makes the following argument, which the Court is unable to
comprehend, and thus, does not address: "The Defendants did not object in their response that the
fraud letter was privileged.  It never has been stated in this case that the 'Fraud Letter' is
privileged.  Since the court did not address the documents related to the 'Fraud Letter,' which is
what Plaintiff seeks, Plaintiff is entitled to those documents submitted to the FAA which are
'related to the Fraud Letter.'"

the record whether the Magistrate Judge found that the requested information was privileged by § 193.17 or some other provision of the regulation, the Court cannot fully assess the correctness of the Magistrate Judge's ruling. The Plaintiff's Objection is **SUSTAINED IN PART**, insofar as the Court **REMANDS** this issue to the Magistrate Judge for elaboration on the reasons for his finding the requested material privileged under § 193.[14]

(e)  Request for Production 8

This request sought "All documents relating to any claim by AAI for costs and attorney fees." The Defendants responded that the billing records in question are protected by attorney-client and work product privileges. The Magistrate Judge found that "the Plaintiff has not asserted a formal claim for attorney fees. The court finds that Plaintiff is not entitled to such attorney fees billing statements," citing *In re Gibco, Inc.*, 185 F.R.D. 296, 299 (D. Colo. 1997). The Plaintiff objects, claiming that *Gibco*, in fact, supports a finding that amounts billed are not privileged. The Court finds that the Magistrate Judge did not abuse his discretion in denying this request, but for different reasons than those stated.

The Plaintiff's motion to compel states that "The Defendant is seeking its attorneys' fees in this case." The apparent basis for the Plaintiff's contention is the Defendants'"Rule 26 disclosures." Those disclosures are not part of the record but, the Court assumes that they reflect a request by the Defendants for the costs and fees of defending against this litigation on the grounds that the claims are frivolous; in other words, the Defendants request costs and fees pursuant to Fed. R. Civ. P. 11. No motion brought under Rule 11 is currently pending and

---

[14]Upon remand, if the Magistrate Judge determines that the requested information is no longer relevant based on the narrowing of the issues in this case by the Court's summary judgment ruling, he may so hold without considering the privilege issue further.

therefore no discovery is warranted.  Furthermore, if the Plaintiff seeks the discovery to be able to assess his potential exposure for a sanction at the close of the litigation, the actual amount of fees billed by the Defendant are completely collateral to the merits of the litigation and impose an undue burden on the Defendant .  Under these circumstances, absent a showing that the Defendants' claim of attorney's fees is based on a substantive counterclaim, the Court finds that the requested discovery is properly withheld.  The Plaintiff's Objection on this issue is **OVERRULED**.

(f)  Request for Production 9

The Plaintiff requests "all documents relating to the procedures for reporting of safety concerns by AAI employees."  The Defendants objected, claiming the request was vague as to time and thus, overbroad and irrelevant.  The Magistrate Judge agreed that it was overbroad and irrelevant.  The Plaintiff objects, stating that "This is a case about Plaintiff telling Defendants that retaining an alcoholic . . . was crazy and violated FAA regulations besides being ridiculously unsafe.  What could be more relevant . . .?"  To whatever extent that the Plaintiff's assertion was correct before the Court ruled on the summary judgment motion, it is no longer true.  The only issues left in this case are whether the Plaintiff had a contract of employment with the Defendants, and whether the termination of the Plaintiff breached that contract.  The information sought by the Plaintiff in this request is not relevant to any of the claims remaining in the lawsuit, and the Magistrate Judge did not abuse his discretion in denying it.  The Plaintiff's Objection is **OVERRULED**.

(g) Requests for Production 16 and 17

These requests seek "All documents relating to conversations between Mike Bierman and Plaintiff" and "All documents written or composed by Mike Bierman and relating to Plaintiff." The Defendants responded to both requests citing attorney-client privilege, but produced two pages of allegedly non-privileged material. The Magistrate Judge found that both responses were complete, and further found that the claim of privilege with regard to request 17 was well-founded. The Plaintiff objects, stating that the Defendants' response does not contain a privilege log, and is contrary to testimony given by the Plaintiff as to discussions he had with Mr. Bierman before Mr. Bierman became associated with AAI. The Court declines to search the record for evidence to support the Plaintiff's conclusory assertion regarding Mr. Bierman's status, but agrees that, to the extent that the Defendants claim a privilege as to responsive documents they have declined to disclose, it is appropriate to require them to produce a privilege log. The Plaintiff's Objection is **SUSTAINED IN PART**, insofar as the Magistrate Judge shall require the Defendants to produce a privilege log for the withheld documents responsive to this request.[15]

(h) Request for Production 1 and 2

In these requests, the Plaintiff seeks "All documents which reflect any communication between Defendant AAI . . . and any present or former employee of AAI which relates in any way to the Plaintiff," and "All documents which reflect communications between Defendant AAI and any person or entity concerning Plaintiff from 1 November 2002 to the present." The Defendants responded that the requests are overbroad, burdensome, and irrelevant, although they did produce

---

[15]In the alternative, should the Magistrate Judge conclude that the requested information is not relevant to the claims remaining in this litigation following the summary judgment ruling, he may deny the requests on that basis without requiring production of a privilege log.

some 100 pages of responsive documents notwithstanding the objections.  The Magistrate Judge found that this response was complete and deemed no further response required.  The Plaintiff objects, claiming that the Magistrate Judge could not know whether the Defendants' response is complete, and also complains that the Magistrate Judge compelled him to respond fully to similar requests by the Defendants while permitting a less-than-complete response by the Defendants.

The Court cannot find that the Magistrate Judge abused his discretion.  Although it would from the phrasing of their objection that the Defendants have withheld certain responsive documents, nothing in the record suggests that those documents are discoverable over the Defendants' objections.  The Magistrate Judge, based on his close involvement with the proceedings, is in a better position to make this assessment than the Court.  In any event, the Court's ruling on summary judgment may affect the calculus of discoverability in ways not previously anticipated by the parties.  To the extent that the Plaintiff still desires to obtain the documents withheld by the Defendants, more narrowly-targeted requests may be availing.  This Objection is **OVERRULED**.

(i)  Request for Production 7

This request sought "All documents that mention or relate to in any way the 'fraud letter.'"  The Defendants objected on the grounds of privilege under FAA regulations and attorney-client privilege.  The Magistrate Judge found that the "fraud letter" was privileged under the FAA's regulations.  For the reasons previously discussed, the Plaintiff's Objection on this issue is **SUSTAINED IN PART**, pending further consideration by the Magistrate Judge.

(j)  Request for Production 9

This request sought documents relating to the medical treatment of an AAI officer for drug or alcohol dependence.  The Defendants objected on confidentiality and relevance grounds.  On October 21, 2005, the Magistrate Judge entered a Minute Order **(# 76)** granting in part the Defendants' motion for a protective order relating to these documents, allowing certain portions of the documents to be produced to the Plaintiff's counsel under certain restrictions.  The Magistrate Judge denied the Plaintiff's motion to compel responses to the instant request, citing that Minute Order.  The Plaintiff appears to object to the documents that have been produced, apparently complaining that they did not have the information he had hoped for.  The Court finds that the Magistrate Judge did not abuse his discretion in providing the specific documents to the Plaintiff's counsel, and finds that the Plaintiff has not established that there are other responsive documents that have not been produced.  This Objection is **OVERRULED**.

(k) Request for Production 10

This request sought information relating to the compensation of AAI's Vice Presidents from March 2002 to November 2002.  The Defendants objected on relevance grounds.  The Magistrate Judge agreed.  The Plaintiff objects, claiming that he has asserted that a term of his contract with the Defendants was a "most favored nations" clause, which allegedly entitled the Plaintiff to be paid the same compensation as the highest-paid Vice President of AAI.  Although it would appear that the Plaintiff is correct that the information is relevant should the Plaintiff successfully establish that such a clause existed, this Court is not prepared to say that the Magistrate Judge necessarily abused his discretion in denying production of such evidence.  The Court can conceive of a number of possibilities which may have factored into the Magistrate

34

Judge's decision, but were not included in his findings.  This Objection is **SUSTAINED IN PART**, and remand back to the Magistrate Judge for further elaboration on his findings or reconsideration of the issue.

(*l*)  Request for Production 11

This request seeks information relating to the compensation of AAI's present general counsel.  The Defendants opposed the request, claiming it was irrelevant.  The Magistrate Judge agreed.  The Plaintiff objects, asking "Is it not possible that a jury would want to know what AAI pays the general counsel that replaced Plaintiff?"  Again, even assuming this issue may have had some relevance before the Court's summary judgment ruling, it is not relevant anymore.  The issue remaining is whether the Defendants breached a contract of employment with the Plaintiff.  His damages, if any, are those arising under the terms of that contract.  Evidence of what the Defendants pay someone else is not relevant to the remaining issues.  The Magistrate Judge did not abuse his discretion on this issue, and this Objection is **OVERRULED**.

## CONCLUSION

For the foregoing reasons, the Plaintiff's Motion to Amend Complaint **(no docket number**, filed on or about May 31, 2005) is **GRANTED**, and the Plaintiff shall file the proposed Second Amended Complaint[16] within 5 days of the date of this Order and shall promptly effectuate service of process on Ms. Burquest.  The Plaintiff's Motion to Stay Transfer Order **(no docket number**, filed on or about June 7, 2005) is **DENIED AS MOOT**.  The Defendants'

---

[16]The proposed Second Amended Complaint as tendered shall be filed.  This Court's rulings on summary judgment control the disposition of the relevant claims as asserted in that Second Amended Complaint, and no further response to those claims upon which summary judgment was granted shall be required.

Motion for Summary Judgment **(# 36)** is **GRANTED IN PART**, insofar as summary judgment on the first (slander), third (wrongful discharge), fifth (promissory estoppel), sixth (tortious interference with contract), and seventh (tortious interference with prospective business relationship) causes of action in the Amended Complaint is granted to the Defendant, and **DENIED IN PART**, insofar as the second (breach of express contract) and fourth (breach of covenant of good faith) have genuine issues of fact requiring a trial.  The Plaintiff's Objections **(# 63)** to the September 13, 2005 Order **(# 60)** of Magistrate Judge Watanabe are **OVERRULED** in their entirety.  The Plaintiff's Objections **(# 75)** to the October 24, 2005 Order **(# 70)** of Magistrate Judge Watanabe are **OVERRULED** in their entirety.  The Plaintiff's Objections **(# 89)** to the October 21, 2005 Order **(# 77)** of Magistrate Judge Watanabe are **OVERRULED** in their entirety.  The Plaintiff's Objections **(# 95)** to the October 28, 2005 Order **(# 85)** of Magistrate Judge Watanabe are **OVERRULED** in their entirety.  The Plaintiff's Objections **(# 96)** to the October 28, 2005 Order **(# 83)** of Magistrate Judge Watanabe are **SUSTAINED IN PART**, insofar as the Court **REMANDS** issues relating to Requests for Production 6, 16, and 17 in the Plaintiff's Second Request for Production of Documents, and Requests 7 and 10 of the

Plaintiff's Third Request for Production of Documents to the Magistrate Judge for further

consideration, and **OVERRULED IN PART**, in all other respects.  The Plaintiff's Motion for a

Hearing (**# 101**) is **DENIED AS MOOT**.

Dated this 23d day of November, 2005

**BY THE COURT:**

*Marcia S. Krieger*
_____

Marcia S. Krieger
United States District Judge